UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| VENCINE HADLEY and MARY FLO HORAN, <br><br> Plaintiffs, <br><br> v. <br><br> WASHINGTON STATE PATROL et. al., <br><br> Defendants. | CASE NO. CV23-5776 <br><br> ORDER |

This matter is before the Court on defendants' motion for summary judgment Dkts. 23, 38. Plaintiff Vencine Hadley led law enforcement in a high-speed car chase with plaintiff Mary Flo Horan in his passenger seat. After his car crashed to a stop, Hadley attempted "suicide by cop" by pretending to have a gun in his hands and pointing it at police in hopes that they would shoot him. Washington State Patrol (WSP) Troopers Bacheller and Tippets, and Cowlitz Indian Tribal Public Safety Department Officer Moore all opened fire in response, hitting Hadley twice. Horan suffered glass cuts in her leg, but both she and Hadley survived their injuries.

Hadley and Horan assert a 42 U.S.C. § 1983 claim alleging that Bacheller, Tippets and Moore violated their Fourth and Fourteen Amendment rights by using excessive force, as well as state law outrage and negligence claims against the officers. They also assert a § 1983 *Monell* claim that is difficult to follow. They argue that by failing to reprimand Bacheller and Tippets for engaging in a car chase with Hadley after he had only committed minor traffic violations, WSP "sanctioned" the pursuit which started the chain of events that culminated in the shooting. They also argue Moore's decision to shoot reveals that he had inadequate lethal force training which was also caused the shooting.

Bacheller, Tippets, and Moore argue that even when the evidence is viewed in Hadley and Horan's favor, the officers' use of force was plainly reasonable, and even if it was not, they have qualified immunity. They argue plaintiffs' outrage claims are duplicative of their "failed civil rights claims" and must therefore also be dismissed.

The Court concludes that the use of force was reasonable, that the officers conduct was not negligent let alone outrageous, and that plaintiffs fail to provide sufficient evidence under either of their stated theories to sustain their *Monell* claim. It grants summary judgment dismissing all of Hadley and Horan's remaining claims and closes the case.

# I.   BACKGROUND[1]

On June 3, 2021, Officer Voelker of the Kelso Police Department encountered Hadley's vehicle in a shopping center. The car did not have rear license plates. Voelker pulled Hadley over. Dkt. 33-1, Rpt. at 2. When Voelker asked Hadley to turn off his car, Hadley instead sped off and entered the freeway. *Id*. Voelker did not pursue him onto the freeway, but WSP broadcast a description of Hadley and his vehicle over the radio.

Hadley asserts that WSP troopers Bacheller and Tippets heard on the radio that he was "speeding and changing lanes" and shortly thereafter began to pursue him in their patrol car on the freeway. Dkt. 45 at 3. After clocking Hadley going 89 mph in a 70 zone, they turned on their sirens and signaled him to pull over. Dkt. 26, Bacheller Decl. at 5. Hadley instead accelerated and exited the freeway in an apparent effort to lose the troopers. Shortly after exiting the freeway Hadley sideswiped another vehicle which disabled Hadley's vehicle, and he came to a complete stop on the side of a roundabout. Dkt. 26-1, Dash. Cam. at 11 min. 15–56 secs.

Bacheller and Tippets stopped their vehicle behind him, drew their weapons, and commanded Hadley and Horan to show their hands. Around that time Officer Moore, who had been listening to the pursuit traffic on the radio, arrived to assist Bacheller and Tippets. Dkt. 27-2, Moore Interview at 164-291; 467-490. Hadley and Horan assert that the cacophony of commands from the officers was confusing and profane. Dkt. 45 at 17.

---

[1] The facts are drawn from plaintiffs' complaint, defendants' motion, and plaintiffs' opposition. Neither Hadley nor Horan submit declarations with their account of what happened. The Order construes all facts and reasonable inferences in plaintiffs' favor.

Even so, Horan complied completely with the officers' commands. Hadley asserts that he at least complied with Moore's command to place his hands on the outside of his car, (Dkt. 1-2, ¶ 36), but the officers and Horan assert that he did not comply with this command or any others. Dkt. 31-1, Horan Statement at 430-454; Dkt. 23 at 6. As Bacheller, Tippets and Moore shouted commands, they watched as Hadley searched the driver's compartment frantically for what they assumed (and Hadley later confirmed) to be a gun. Dkt. 26, Bacheller Decl. ¶ 14; Dkt. 32, Tippets Decl. at ¶17; Dkt. 27-2, Moore Interview at 478–489.

Shortly after they started shouting commands, Bacheller, Tippets, and Moore observed Hadley thrust his hands out of the window pointing what appeared to be a pistol at them. *Id*. In response, Tippets, Bacheller, and Moore all opened fire at approximately the same time, shooting Hadley twice. Dkt. 27-4, Rpt. at 7, 11. Hadley admits to cupping his hands out of his window to pretend he held a gun, but asserts that the shooting only started when Moore mistook his watch for a gun, and shouted "gun." Dkt. 45 at 17. The officers stopped firing as soon as they no longer saw Hadley pointing what they believed to be a gun[2] at them. Dkt. 26, Bacheller Decl. at 5; Dkt. 32, Tippets Decl. at 6; Dkt. 27-2, Moore Interview at 719–725. Moran was not shot, but suffered minor cuts on her leg. She

---

[2] It is uncontested that Hadley had a gun in his car, but accounts differ as to whether he had the gun within reach at the time officers opened fire. Hadley asserts that he could not find his gun at that point, although he knew it was in his car. Dkt. 27-1 at 1173-1186. Horan asserts that he took the gun out of a red case and had it in his hands when officers opened fire. Dkt. 45-1 at 735–777; Dkt. 31-1 at 1082-1084. As is explained in section C of this Order, so long as officers reasonably believed that Hadley posed an imminent threat, they can use lethal force even if they were mistaken.

1  was able to safely exit the vehicle after Hadley was shot, and refused medical treatment at

2  the scene. Dkt. 31-2, Rpt. at 6.

3      After being shot, Hadley told police that he had a gun in his lap and would shoot

4  them, and refused to comply with commands. Dkt. 27-1, Hadley Interview at 1133–1138.

5  Tippets called for emergency medical assistance. Dkt. 32 at 7. More law enforcement

6  arrived at the scene, and Hadley continued to refuse commands and told officers "I'm

7  ready to die!" and "shoot me right here" while pointing at his forehead. Dkt. 28-1, Rpt. at

8  4. He eventually surrendered and was taken to the hospital. *Id.*

9      Police found a loaded handgun in his car. Hadley asserts they found it in the back

10  of the car in a bag, "on the floor of the car under the seat and not within reach of

11  [Hadley]." Dkt. 45 at 16. In support, he cites to photos taken from the scene, but those

12  photos do not show the gun let alone its location within the car. *See* Dkt. 45-5. The

13  defendant officers assert police found it in the front on the driver's side floorboard of his

14  car. Dkt. 28-1, Dunham Rpt. at 5; Dkt. 34-1, Weed Rpt. at 4.

15      Hadley later admitted that he was suicidal throughout the interactions with police

16  and wanted to act in a way that would ensure they would shoot him. Dkt. 27-1, Hadley

17  Interview at 1173–1186. He asserts that he initially could not find the gun in his car, so

18  he cupped his hands out the window as though he held a gun because he "knew I had to

19  act like I had something in order for them to shoot." *Id*. at 1319-1483. When asked in his

20  post arrest interview whether he blamed the police officers for shooting him, he

21  responded "No." *Id*. at 1433-1435.

22

1    Hadley and Horan sued all the officers involved as well as their respective police

2 agencies and the Cowlitz Tribe. Dkt. 1-2, Complaint. The Court dismissed many of their

3 claims[3] in its prior Order, Dkt. 18. The present Order addresses their remaining claims.

4 First, Hadley and Horan claim under 42 U.S.C. § 1983 that Bacheller, Tippets, and

5 Moore used excessive force against them both, violating the Fourth Amendment and

6 Fourteenth Amendment. They argue that because Hadley was technically unarmed and

7 Horan complied with orders, neither one of them posed an immediate threat at the time

8 officers opened fire. Dkt. 45 at 34. Second, they allege "outrage" claims, arguing that the

9 officers intentionally or negligently inflicted emotional distress by pursuing them in their

10 vehicle and shooting Hadley. Third, they allege that the officers were negligent both in

11 deciding to engage Hadley in a vehicle pursuit and in shooting Hadley. Dkt. 1-2 at 11.

12 Fourth, plaintiffs assert a *Monell* claim. Their arguments in support of this claim are

13 difficult to follow, but include that WSP's failure to discipline Bacheller and Tippets for

14 pursuing Hadley after a minor traffic violation "clearly indicates that the Washington

15 State Patrol sanctioned the actions which led to the shooting" and that Moore's decision

16 to shoot belies his lack of adequate training. Dkt. 45 at 29.

17

18

19

20

---

21    [3] The Order dismissed Hadley and Horan's § 1983 Fourth and Fourteenth Amendment claims against Tippets and Bacheller in their official capacities, § 1983 vicarious liability claims against Batiste, the § 1985(3) claim, the § 1988 claim, the WLAD claim, the RCW 43.101.410

22 claim, and the claims for injunctive relief. Dkt. 18 at 11.

Bacheller, Tippets, and Moore move for summary judgment on all of plaintiffs' remaining claims. Dkt. 23;[4] Dkt. 38. They argue that lethal force was reasonable, and that qualified immunity protects them from suit because plaintiffs cannot show that they violated a clearly established right. They argue the outrage claim is duplicative of the "failed civil rights claims" and must therefore be dismissed. Dkt. 23 at 19. They also argue plaintiffs cannot show a breach of duty to sustain their negligence claim. Defendants do not directly address plaintiffs' *Monell* claims, but their motion to dismiss all of plaintiffs' remaining claims necessarily includes it.[5]

Their arguments are addressed in turn.

## II.   DISCUSSION

### A.   Legal Standard

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986);

---

[4] Defendants move to strike Hadley's opposition brief to their motion because it was overlength in violation of LCR 7(e)(3). Dkt. 53. The Court acknowledges that Hadley's opposition was both overlength and required yet another late filed motion for an extension which the Court granted. Dkt. 48. It however exercises its discretion to consider the opposition in its entirety. Defendant's motion to strike Hadley's response, Dkt. 53, is **DENIED**.

[5] Plaintiffs acknowledge this in their opposition. Dkt. 45 at 28 ("Defendants seeks summary judgment on plaintiff's municipal liability claim.").

*Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). Rule 56's plain language mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Anderson,* 477 U.S. at 250. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

There is no requirement that the moving party negate elements of the non-movant's case. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990). In order to avoid summary judgment, the nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita*, 475 U.S. at 586. Rule 56(e) requires that the nonmoving party set forth specific facts showing that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 256.

## B.    Qualified Immunity

Under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The purpose of the doctrine is to "protect officers from the sometimes 'hazy border' between excessive and acceptable force." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)).  A two-part test resolves claims of qualified immunity by determining whether plaintiffs have alleged facts that "make out a violation of a constitutional right," and if so, whether the "right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 553 U.S. 223, 232 (2009).

Qualified immunity protects officials "who act in ways they reasonably believe to be lawful." *Garcia v. County of Merced*, 639 F.3d 1206, 1208 (9th Cir. 2011) (quoting *Anderson*, 483 U.S. at 631). The reasonableness inquiry evaluates "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Graham v. Connor*, 490 U.S. 386, 397 (1989). Even if the officer's decision is constitutionally deficient, qualified immunity shields from suit if the misapprehension about the law applicable to the circumstances was reasonable. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). Qualified immunity "gives ample room for mistaken judgments" and protects "all but the plainly incompetent." *Hunter v. Bryant*, 502 U.S. 224 (1991).

## C.    Hadley's Excessive Use of Force Claim Fails

Hadley's § 1983 claim asserts that Tippets and Bacheller violated his Fourth and Fourteenth Amendment rights by using excessive force in shooting him when he posed no threat. Dkt. 1-2 ¶¶ 88, 91. He argues that "[t]here is no doubt that shooting at an

1    unarmed black man who failed to stop and remain stopped for not have [sic] a vehicle

2    registration is an excessive use of force[,]" particularly given the fact that after Hadley

3    crashed, his vehicle was disabled. Dkt. 45 at 38. He contends that his concession that he

4    was looking for a gun shortly before officers shot him "does not matter" because officers

5    "only thought" they saw a gun and started shooting in the car "when neither occupant

6    posed an immediate threat." *Id*. at 8, 34. He asserts that officer Moore mistook his watch

7    for a gun, and that Moore then shouted "gun!" which led Bacheller and Tippets to join

8    him in shooting. *Id*. He does not cite any evidence to support his assertion that he was

9    wearing a watch. In some of the video footage he submits it appears he may be wearing

10   one, but the footage is not clear enough to be definitive. *See* Dkt. 45-4 (Iliani Video 2 at

11   20:24-21:25).

12       Bacheller, Tippets and Moore argue that they "reasonably reacted to Hadley's life-

13   threatening provocations by shooting— just as Hadley intended them to react." Dkt 23 at

14   13. Moore also argues that there is no evidence that Hadley wore a watch or that he

15   mistook a watch for a gun. Dkt. 53 at 4. He observes that Hadley never mentioned a

16   watch in any of his post arrest interviews, and WSP property inventory did not include a

17   watch. *Id*. (citing Dkt. 54-2, WSP Evidence List).

18       It is settled law that officers can use lethal force if they have "probable cause to

19   believe that [a] suspect poses a significant threat of death or serious physical injury to the

20   officer or others." *Est. of Strickland v. Nevada Cnty.*, 69 F.4th 614, 620 (9th Cir. 2023).

21   (quoting *Long v. City & Cnty. of Honolulu,* 511 F.3d 901, 906 (9th Cir. 2007)

22   (simplified)). What suffices as a significant threat is a fact specific inquiry. "If the person

1   is armed—or reasonably suspected of being armed—a furtive movement, harrowing

2   gesture, or serious verbal threat might create an immediate threat." *George v. Morris,* 736

3   F.3d 829, 838 (9th Cir. 2013).

4        "All claims that law enforcement officers have used excessive force—deadly or

5   not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen

6   should be analyzed under the Fourth Amendment and its 'reasonableness' standard."

7   *Graham v. Connor,* 490 U.S. 386, 395 (1989). The inquiry is whether the officer's

8   actions are "objectively reasonable in light of the facts and circumstances confronting

9   them, without regard to their underlying intent or motivation." *Id.* at 387. Reasonableness

10  is "judged from the perspective of a reasonable officer on the scene, rather than with the

11  20/20 vision of hindsight." *Hughes v. Kisela*, 841 F.3d 1081, 1085 (9th Cir. 2016). This

12  standard "allow[s] for the fact that police officers are often forced to make split-second

13  judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the

14  amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397.

15       Bacheller, Tippets, and Moore's use of force was objectively reasonable as a

16  matter of law. It does not matter whether Hadley actually had a gun in hand when they

17  opened fire. What matters is that in the moment, Hadley gave them every reason to

18  believe, and in fact they did believe, that he had a gun and was going to shoot. Caselaw

19  instructs that "a furtive movement, harrowing gesture, or serious verbal threat might

20  create an immediate threat" and Hadley gave officers all three—he refused commands

21  while looking quickly for his gun and when he could not find it, mimed pointing one at

22  officers. *George,* 736 F.3d at 838. The unusual and tragic concessions from Hadley

underscore the reasonableness of the officers' decision to shoot. He conceded in his post

arrest interview that officers had probable cause to shoot "because of my hand gestures"

and that he understood why:

> I know how it goes, they gotta protect …themself and their
> fellow people so when I came up with the, you know, too fast, that's when
> the gun sh- rang out.
> …
> Sudden movements alert you guys … even if you're wrong at that time,
> you're right, because what if I did have the gun and then I did point it? You
> see what I'm saying?

Dkt. 27-1 at 1319; 1419-1483. As Hadley himself concedes, his case has unusually clear

facts that plainly render the officers' use of force reasonable.

**D.    Officers are Entitled to Qualified Immunity from Hadley's Excessive Use of Force Claim**

The officers argue that they are entitled to qualified immunity because Hadley

lacks precedent to show that "that every reasonable officer would understand" that their

decision to shoot Hadley "after he pointed a gun at law enforcement (or at a minimum,

tried to make it look as if he was pointing a gun) violated his constitutional rights." Dkt.

23 at 16. In response, Hadley does not provide precedent showing that the officers

violated a clearly established right, but instead asserts without citing precedent that the

officers are "not Entitled to Qualified Immunity for the Claim of Unreasonable Seizure

Under the Fourth Amendment." Dkt. 45 at 31.

Hadley's excessive force claim fails as a matter of law. Even if the officers

violated Hadley's constitutional rights, they are entitled to qualified immunity because

Hadley has not met his burden of showing that the violation was clearly established.

Hadley's excessive use of force claim is **DISMISSED with prejudice**.

**E.    Horan's Excessive Use of Force Claim Fails**

Horan similarly claims Tippets, Bacheller, and Moore violated her Fourth Amendment rights by using excessive force against her as a passenger. She argues that she was an innocent bystander, and that she "was injured by shrapnel of bullets racing through steel, causing her extreme panic and distress." Dkt. 45 at 34. She is inconsistent about precisely what material hurt her. At some points she asserts it was "shrapnel," however in her post arrest interview she asserts that when the shots broke out "glass [broke] everywhere" and went in her leg. Dkt. 45, Opposition at 14 (quoting Dkt. 45-1, Horan interview at 139:566–68).

Tippets, Bacheller and Moore argue that Horan's claim fails for the same reasons Hadley's does: their shooting was a reasonable response to a life-threatening situation created by Hadley, and they are entitled to qualified immunity. They additionally assert that "Horan was not *shot*, she was *not* the deliberate object of the Troopers' [and Moore's] use of force," and that she does not offer any evidence that her injures were "proximately caused by shell fragments or anything that can be defined as 'shrapnel.'"[6] Dkt. 23 at 17–18; Dkt. 60 at 8. Finally, they argue that the Ninth Circuit's recent decision in *Cuevas v. City of Tulare* is directly on point and fatal to her claim. Dkt. 23 at 17–18.

---

[6] It appears likely that Horan simply referred to glass fragments incorrectly as "shrapnel."

In *Cuevas*, police incidentally shot an innocent passenger while defensively returning fire in a life-threatening situation created by the driver. 107 F.4th 894, 897 (9th Cir. 2024). The court held the officers were entitled to qualified immunity: "The alternative would be untenable. Officers would have to either not defend themselves or risk liability if they accidentally hit a bystander when they return fire." *Id.* at 902.

Horan's claim commands the same result. She cannot carry her burden to show that it was clearly established that the officers violated her rights when they responded defensively to an immediately life-threatening situation Hadley created. Her excessive force claims are **DISMISSED with prejudice**.

## F.    The *Monell* Claim Fails as a Matter of Law

Hadley and Horan assert a *Monell* claim that is difficult to follow. Their complaint asserts

> The actions, inaction and negligence of Washington State, the Washington State Patrol, Chief Batiste, Cowlitz Indian Tribe, Cowlitz Indian Tribal Police Public Safety Department and its director constituted a Monell Claim by ratification of the defendant officer's actions in violation of 42 U.S.C. § 1983…[and] having policy and practices which allowed officers to violate 42 U.S.C. § 1983[.]

Dkt. 1-2, ¶¶ 92, 93.

As an initial matter, the allegation that defendants violated § 1983 is not cognizable. "One cannot go into court and claim 'a violation of § 1983'—for § 1983 by itself does not protect anyone against anything." *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). It does not create any substantive rights. § 1983 is

1    instead merely "a vehicle for enforcing individual rights secured elsewhere, most

2    typically in the United States Constitution." *Id*.

3        The articulation of Hadley and Horan's *Monell* claims in their opposition to

4    summary judgment is also difficult to follow. They do not directly assert that either

5    municipality had a policy that was the moving force behind their alleged constitutional

6    injuries. They instead argue that WSP's failure to "take action" against Bacheller and

7    Tippets for "initiating and maintaining a pursuit in violation of the actual reasons a

8    pursuit may be initiated, clearly indicates that the Washington State Patrol sanctioned the

9    actions which led to the shooting." Dkt. 45 at 29. They do not include a copy of the

10   pursuit policy that they argue the troopers violated. Although they appear to reference a

11   policy that prohibits pursuit for traffic violations, they do not attach nor cite it. *Id*. at 26.

12   They reference vehicular pursuit statute, RCW 10.116.060 which restricts when officers

13   can engage in pursuits, but it was not effective at the time of the incident. *Id*.

14       They also appear to argue that Moore's "lack of training" on lethal force was a

15   moving force behind the shooting. *Id*. Finally, they assert that the "glossed over

16   investigation[7] by fellow officers and the lack of discipline imposed for such an

17   egregious set of events puts the agencies under the spotlight and only a jury should

18   determine their level of conspiracy and cover up" and that "[t]his evidence demonstrates

19

20       ---

7 Hadley and Horan do not specify what investigation this refers to. The Court assumes

21   they refer to the Washington Association of Prosecuting Attorney's (WAPA) investigation that
     conducted an external review of the use of force and concluded it was in "good faith" as defined
     in RCW 9A.16.040(4). Dkt. 24-1. Neither WSP nor the Cowlitz police participated in that

22   review.

1  that the officers' conduct was not in line with the standard practices of police

2  departments" and that all of this is sufficient for their *Monell* claim. Dkt. 45 at 29.

3        To succeed on a *Monell* municipal liability claim under 42 U.S.C. § 1983, Hadley

4  and Horan must show that the defendant's employees acted through an official custom,

5  pattern or policy that permits deliberate indifference to, or violates, their civil rights; or

6  that the entity ratified the unlawful conduct. *See Monell v. Dep't of Soc. Servs.*, 436 U.S.

7  658, 690–91 (1978); *Larez v. City of Los Angeles*, 946 F.2d 630, 646–47 (9th Cir. 1991).

8  They must allege: (1) that a municipal employee or agent violated a constitutional right;

9  (2) that the municipality has customs or policies that amount to deliberate indifference;

10  and (3) that those customs or policies were the "moving force" behind the constitutional

11  right violation. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403–04 (1997). A

12  municipality may be liable for inadequate police training when "such inadequate training

13  can justifiably be said to represent municipal policy" and the resulting harm is a "'highly

14  predictable consequence of a failure to equip law enforcement officers with specific tools

15  to handle recurring situations.'" *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1186 (9th

16  Cir. 2006) (quoting *Bd. of Cnty. Comm'rs*, 520 U.S. at 409).

17        Hadley and Horan fail to present any evidence that Bacheller, Tippets, or Moore

18  violated their constitutional rights, let alone that municipal policy or customs amount to

19  deliberate indifference and were the "moving force" behind the alleged violations.

20  Bacheller and Tippets complied with the vehicle pursuit policy in place at the time. *See*

21  Dkt. 24-1, WAPA Rpt. at 12. Plaintiffs fail to show that this policy amounts to deliberate

22  indifference, or that WSP's refusal to reprimand them for the pursuit is the "moving

force" behind the shooting. Their bald assertions that the car chase started a chain of events that resulted in the shooting is insufficient. Finally, their attempt to infer from Moore's decision to shoot Hadley that his training on lethal force was inadequate falls well short of their burden to sustain a *Monell* claim. They lack any evidence to show that his training left him without the tools to handle reoccurring situations. *Long*, 442 F.3d at 1186. To the contrary, both Hadley and this Court agree that the officers' use of force was a reasonable response to Hadley's behavior. Plaintiffs' *Monell* claim fails as a matter of law and defendants' motion for summary judgment to dismiss it with prejudice is **GRANTED**.

## G. Plaintiffs' Outrage Claims Fail as a Matter of Law

Hadley and Horan assert a state law negligent or intentional infliction of emotional distress (outrage claim). Dkt. 1-2 ¶¶ 67, 87. It is unclear precisely what facts underlie their outrage claim, but they appear to argue that the officer's decisions to both engage in a vehicle pursuit after a minor traffic violation and their decision to shoot when neither plaintiff posed an immediate threat were extreme and outrageous, and propelled at least in part by racism. Dkt. 1-2, ¶¶ 59, 62, 67.

Defendants argue that because these outrage claims are based on the same facts as plaintiffs "failed civil rights claims," they are duplicative and must be dismissed. Dkt. 23 at 20. It is unclear what defendants mean by "failed civil rights claims." They do not cite to nor describe any claim. Nor do they explain what facts Hadley and Horan rely on for their outrage or "failed civil rights claims." All of the cases defendants cite however dismiss outrage claims that are duplicative of Washington Law Against Discrimination

1    (WLAD) claims. Dkt. 23 at 20. The Court therefore assumes that by "failed civil rights

2    claims" defendants refer to the WLAD claim that the Court dismissed in its previous

3    Order. Dkt. 18 at  9.

4          Hadley and Horan do not address the argument that their outrage claim should be

5    dismissed because it is duplicative of other claims.

6          Defendants are correct that under Washington law, if outrage claims are "based on

7    the same facts underpinning a plaintiff's claim for unlawful discrimination, [the outrage

8    claims] are duplicative of the discrimination claim and therefore must be dismissed."

9    *Ellorin*, 996 F. Supp. 2d at 1094. In all the cases defendants cite however, the underlying

10   discrimination claim that the outrage claim "duplicated" survived. *See Anaya v. Graham*,

11   89 Wn. App. 588, 594–95 (1998); *Haubry v. Snow*, 106 Wn. App. 666, 678 (2001);

12   *Ellorin v. Applied Finishing, Inc.*, 996 F. Supp. 2d 1070, 1094 (W.D. Wash. 2014). In

13   contrast, the Court here already dismissed Hadley's WLAD claim. Dkt. 18 at 9. It will

14   not dismiss the outrage claim on the sole basis that it is duplicative of the WLAD because

15   it does not risk granting duplicative recovery.

16         Plaintiffs' state law outrage claims independently suffer fatal defects that require

17   dismissal. Viewed in the light most favorable to Hadley and Horan, the evidence would

18   not permit a reasonable jury to find for them on their outrage claim. An outrage claim

19   requires a showing of "(1) extreme and outrageous conduct, (2) intentional or reckless

20   infliction of emotional distress, and (3) actual result to the plaintiff of severe emotional

21   distress." *Monetti v. City of Seattle*, 875 F. Supp. 2d 1221, 1231 (W.D. Wash. 2012)

22   (cleaned up). The alleged conduct must go "beyond all possible bounds of decency, and

to be regarded as atrocious, and utterly intolerable in a civilized community." *Grimsby v. Samson,* 85 Wn.2d 52, 59 (1975). Although the question of whether certain conduct is sufficiently outrageous is ordinarily for the jury, it is the trial court's responsibility to determine "whether reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability." *Johnson v. City of Olympia*, No. 17-cv-5403, 2018 WL 4681554, at *2 (W.D. Wash. Sept. 28, 2018).

Here, nothing about the Bacheller, Tippets, or Moore's conduct towards Hadley and Horan approaches "extreme and outrageous," nor is there any evidence to support that they intentionally or recklessly inflicted emotional distress on Hadley or Horan. To the contrary, their use of lethal force was reasonable and their interactions with both plaintiffs after shooting were commendable. They were able to get Horan safely out of the car and offer her medical assistance. And despite Hadley's continued refusal to follow commands and pleas to for police to shoot him, they were able to convince him to surrender and call him an ambulance. Plaintiffs cite no authority even suggesting that an outrage claim survives summary judgment on similar facts. Defendants' summary judgment motion on plaintiffs' outrage claims is **GRANTED** and those claims are **DISMISSED with prejudice.**

## H.    Plaintiffs' Negligence Claims Fail

Hadley and Horan allege negligence claims against Bacheller, Tippets, and Moore. Dkt. 1-2, ¶ 70. They allege that the troopers and Moore breached their duty of care when they "unreasonably and unnecessarily shot" at them. They also argue that police policy prohibits high-speed vehicle pursuit for traffic violations, and that the troopers were

1  therefore negligent in chasing Hadley with their car, and this negligent pursuit set off the

2  chain of events ultimately culminating in the shooting. Dkt. 45 at 22.

3      Bacheller, Tippets, and Moore argue plaintiffs cannot now show that they

4  breached any duty of care. Dkt. 23 at 20. Moreover, they argue that "Horan also cannot

5  present any evidence demonstrating that the alleged cuts on her leg were proximately

6  caused by 'shrapnel' rather than from the car accident immediately preceding the

7  shooting." *Id*. They assert that their pursuit complied with policies at the time (Dkt. 24-1,

8  WAPA Rpt. at 12), and emphasize that the vehicular pursuit statute plaintiffs reference,

9  RCW 10.116.060, was not enacted until after the incident.

10      Plaintiffs must prove four basic elements to sustain a negligence claim: duty,

11  breach, injury and proximate cause. *Ranger Ins. Co. v. Pierce Cnty.*, 164 Wn.2d 545, 552

12  (2008). Breach and proximate cause are generally questions for the jury, unless

13  reasonable minds could not differ. *Hertog, ex rel. S.A.H. v. City of Seattle*, 138 Wn.2d

14  265, 275 (1999).

15      Hadley and Horan cannot carry their burden to show that the troopers or Moore

16  breached a duty of care by using lethal force. The Court is persuaded that reasonable

17  minds could not differ on the point that shooting was reasonable given Hadley's actions.

18  Horan and Hadley's attempt to rely on a pursuit statute enacted after the incident fails to

19  establish that troopers breached a duty. The Washington Association of Prosecuting

20  Attorneys investigation concluded that "the pursuit, under the law in effect at the time,

21  was lawful." *See* Dkt. 24-1, WAPA Rpt. at 12. Plaintiffs fail to offer any evidence or

22  credible argument that Bacheller or Tippet's decision to engage Hadley in a vehicle

1  pursuit when he was speeding and driving erratically breached a duty of ordinary care.

2  Even if plaintiffs could establish a breach of duty with the vehicle pursuit, they have

3  failed to show that this breach was the cause of their injury. Accordingly, defendants'

4  motion for summary judgment on plaintiffs' negligence claims is **GRANTED**, those

5  claims are **DISMISSED with prejudice**.

6  **III.  ORDER**

7       Therefore, it is hereby **ORDERED** that defendants' motion for summary

8  Judgment, Dkt. 23, is **GRANTED**.  Hadley and Horan's remaining claims are

9  **DISMISSED with prejudice**. Plaintiffs motion to extend the discovery schedule, Dkt.

10  64, is **DENIED as moot**.

11       The Clerk shall enter Judgment and close the case.

12       Dated this 14th day of February, 2025.

BENJAMIN H. SETTLE
United States District Judge